Thank you, and may it please the Court, Jason Orr of the Melvin E. Myers Pro Bono Council for the petitioner in this case. I'd like to reserve three minutes of my time for rebuttal. This case is about how harsh and how unforgiving the immigration system of this country is meant to be. At no point in this years-long litigation has the government been able to articulate what more the petitioner should have done to maintain her lawful status. Instead, it is committed to deporting a talented, honest, and hard-working individual based on little more than a paperwork mistake. There are three independent reasons that this Court should reverse the BIA's holding here. First is that the holding is unsupported by substantial evidence. The second is that the USCIS regulation at issue here is an unreasonable interpretation of the statutory text. And third, equitable tolling applies here to enlarge the 180-day grace period that is created for specialty workers like Ms. Peters. I do not intend to reach the issue of whether there was evidence below that Ms. Peters' employer could pay the proffered wage. Unless the Court has any questions about that subject, I'll stick to these three. And rest on the briefs on the other issue. It seemed to me, just to be fair, that you did not address step one of the Chevron deference in your brief. Are you conceding that the phrase, no fault of your own, is ambiguous? No. No, Your Honor. Then why didn't you address Chevron step one? I believe the briefs did address Chevron step one. Well, I read that and I couldn't find it, so that's why I asked you the question. It seemed to me, based on your brief, that I was already at the point where the statute was ambiguous and therefore I had to determine what to do thereafter in step two. I apologize if the brief was unclear, but it did state that that language means exactly what it says. It is unambiguous. The statute at 8 U.S.C. section 1255C says that an alien is ineligible for a green card unless the lapse from lawful status is through no fault of his own or for technical reasons. And we believe that that language is unambiguous. Well, half of it is arguably ambiguous, the technical reasons. But fault has a clear definition, doesn't it? I would contend that both components of that phrase are unambiguous. It may be the case that the language is broad enough to encompass a wide variety of circumstances that are not defined by statute, but it does not follow that the language itself lends itself to different interpretations. Well, I don't want to take your time on this point, but the issue about whether the document, the I-29 extension, was actually mailed, the regulation would help you on the technical definition, the reg. What seems to me to be the issue is whether it seems to me that fault, through no fault of his own, strikes me as fairly ambiguous, as fairly clear and unambiguous. I would agree with you, Your Honor, that no fault is crystal clear. So if no fault of your own is not ambiguous, then the regulations themselves are not needed? Is that what you're arguing? I would argue that the narrow circumstances defined by those regulations do not constrain. There's no really reason for the regulations if it's an unambiguous statute, is there? I would contend that there is no reason for the. . . So then are you arguing that I can determine what the statute says, not alone because I've got good colleagues here, but that we can determine what the statute says? Yes, we believe that. And therefore we could determine no fault of your own includes then where we have ineffective assistance of counsel? I agree with Your Honor that you can decide what that means. I'm not really asking the agreement. I'm trying to get what your argument is. If this statute is unambiguous and it's clear, then it seems to me then that the agency had no authority to try to interpret it, had no authority to try to issue regulation, and therefore I'm left, as Judge Gorsuch would suggest, to make the definition of the statute. And therefore if I can make the definition of the statute, I can just as easily suggest that the statute has in it exceptions. One of those exceptions is not ineffective assistance of counsel, and therefore it isn't an exception. Or I could say it is an exception nonetheless because it's clear, no fault of your own. That's correct. It is on this court to interpret the meaning of that statutory text. I just pause when you say ineffective assistance of counsel because although that phrase has been used at several points below, as Your Honor is aware, ineffective assistance of counsel is a constitutional doctrine stemming from a due process right to counsel. And we've never contended that Ms. Peters had a due process right to have her petition sent in by counsel. The issue of ineffective assistance of counsel as a term of art is beside the point. I mean, here the question is whether a petitioner was at fault in falling from lawful status. Well, I understand. But in this instance, what you're suggesting is that because of lawyer's conduct, you're not at fault. Isn't that what you're saying? Under the facts of this case, yes, Your Honor. Ms. Peters' reasonable reliance on her immigration attorney made any lapse in lawful status not her fault, under the meaning of this statute. So let's say that the statute is ambiguous. The question then under Chevron is, is this a reasonable interpretation of the statute? Now, the regulations themselves don't really interpret the text so much as they narrow a broad exception that was defined by Congress into a very narrow exception by limiting it to four specific and highly technical circumstances. We believe that this is an unreasonable and arbitrary interpretation of the statute. Why is it unreasonable? It seems to me that if we get too ambiguous and we're really saying what it is that we're gap-filling or what it means that why would we say the agency's limitations that they have suggested are not the reasonable ones anticipated? What would give us that idea? Well, the text itself. The text itself is far broader than that. Congress did not want people like Ms. Peters to be kicked out of the country based on some small error in her paperwork. But the very technical regulations, the government has contended command that result. We believe that even under the narrow meaning of those regulations, there is still one exception, a technical violation resulting from an action of the service that is supported in the record and that Ms. Peters supported and proved beyond, sorry, by preponderance of the evidence. Well, I don't know that if we go there, don't we have to give some deference to what the agency has suggested as to that? Because it was no question that that was argued, but the agency suggests that there's not enough here to suggest anything that the paperwork was ever sent. And therefore, it seems to me there's substantial evidence for their finding. I want to be clear about where deference could be owed and where it shouldn't be owed on this decision. Chevron deference may apply, although we believe that it does not, to the USCIS's interpretation of the no fault or technical reasons exception. That is a place where Chevron is applicable, even though under the standards of Chevron, deference is not owed to the agency's unreasonable interpretation. Where Chevron deference does not apply is to the BIA's decision itself and legal holdings of that decision. This court's precedents make clear that a single member decision from the BIA is not owed Chevron deference. It is owed a Skidmore deference, under which the deference that this court gives to the BIA is commensurate with the reasonableness of its decision and the special expertise that went into making that decision. So under Skidmore, a rubber stamp is not owed any deference. And here, the BIA simply agreed with the immigration court's findings without making any other additional analysis and did not rely on any kind of special expertise on immigration law. So we believe that under Skidmore, no deference is owed to the BIA's decision, simply because it was an agency that was rendering a decision pursuant to its authority. Can I ask you, turning to the technical reasons, what you're referring to strikes me as a kind of a finding of fact by the IJ, affirmed by the BIA, that this application was never sent, the application for the renewal, three-year renewal of the I-29, that it was never sent. If it had been sent and not responded to, you would have benefited from the agency's definition of technical. So are we really dealing with now, are we dealing with a question of fact and a finding of fact, or are we really dealing with the construction of the reg? Because the second, I believe the second exception that they formulated would cover, if in fact it had been mailed and had not, would create a, would not have disrupted her lawful status until they acted on it, and so they would have had to have received it. And is that a finding of fact, or are we construing anything about the language of the reg? I'm talking just about the technical. Right. The immigration court did not find that the agency, in fact, did not receive it. I mean, to be, this is a little technical, but the immigration court found that petitioner had not met her burden to show, to prove that USCIS received the petition and did not act on it. Now, either way, I believe that's subject to substantial evidence review. And so the question is whether, under Lee versus INS, whether the finding is supported by reasonable, substantial, or probative evidence. And here, the only evidence that USCIS did not receive the petition is the mere absence of some kind of record in their files showing that it was received. But the record also has evidence that severely undercuts that fact because, especially at the time that petitioner sent in her I-129 petition, this agency was beleaguered by mismanagement. It routinely lost files, misdirected files, would not send out receipt notices for petitions received, would not adjudicate petitions after having received them. And so under other circumstances, maybe that the absence of a record in the agency's files would constitute probative evidence on this point. But here, that fact should be accorded little or no weight. And on the other ‑‑ But if we're reviewing the decision under a substantial evidence review, it seems to me you make a good jury argument for the other side of it, but there's substantial evidence to sustain what they did find. We believe that that lone fact, that there was not a record in the agency's file, does not constitute reasonable, substantial, or probative evidence. That's what your argument is? Yes. Do you know whether the common law mailbox rule applies in this context? That rule gives rise to a presumption of receipt in the ordinary course if you show that you in fact did mail something. Do you know if that rule applies in this context? Well, here under the facts, Ms. Peters, immigration attorney who was representing her at the time, did not secure a delivery receipt or any kind of confirmation that it was sent out. Yes, but does the mailbox rule require that if there's a sworn affidavit that was actually mailed? It's possible it does apply. If you don't know, you don't have authority that says it does. That's all I was asking. That's correct. We haven't been able to find any. The rule definitely applies even if you just put it in regular mail. You don't have to send it by certified or registered mail. But you don't know is the short answer? I can point to no authority that says it does not apply. Okay. We'll ask your comment as well. I'm sorry I didn't hear you. Pardon? I didn't hear what you just said. Oh, I can point to no authority that supports that the mailbox rule does not apply. Can I ask you just a basic factual question? Yes. Just give me the chronology of when these different events occurred. The attorney mails the first I-129 in June. Correct. June, I don't know, whatever date. And within a few days, it's denied? It's rejected as not having the proper attachments or whatever in late June? That's unclear because the receipt stamp on the rejection notice was for September of that year. So it's not clear if, in fact, the evidence shows that the notice was received much later. Okay. Well, that's what I'm trying to get straight. But in terms of when, we have a date, 6-26, I think, is when the agency at least says. But you're saying that neither your client nor her attorney found out about the rejection until later in September? Some months later. That's what the evidence shows. But we don't know when exactly? Well, the attorney suggests that they received it in September. Yes. And that he sent back or mailed his appropriate information after receiving the rejection in September, correct? That's correct. The record is a little unclear on this point because there is no documentary proof of the exact date that the second I-129 petition was mailed. Mr. Richmond, petitioner's attorney, reported different dates based on his recollection when he was put on the spot at various immigration hearings several years down the line. And the different dates were within a, you know, sometime in September or I think October 3rd. That's correct, Your Honor. So they're all within the same general time frame. The exact date is a little hazy. But what is very clear in the record is that Mr. Richmond testified under penalty of perjury and maintained to his death that he did send in the second I-129 petition. So the exact date of it might not be clear in the record. But the fact of it being sent in is supported in the record. Okay. And then just one last question. The checks that were sent in November, do we have an explanation for why they were sent in that time frame? I don't have an explanation for that. Okay. Sorry. His time's gone. Maybe we'll hear from the government. All right. We'll give you some time for rebuttal. Thank you. Good morning, Your Honors. May it please the Court. Remy Darucha-Afodu, representing the U.S. Attorney General.  because the Board has properly determined that Petitioner is ineligible for adjustment of status because she fails to maintain continuous lawful status for more than 180 days. Substantial evidence in the record supports the Board's determination that there is insufficient evidence in the record indicating that Petitioner's counsel resubmitted her petition for adjudication before the agency. What if she reasonably relied on his doing that, that she reasonably believed that he did that, and, in fact, the lawyer, Richmond, was actually retained by her employer, not by her? And what if she reasonably believed that how is it, assuming that he didn't send it, how is that her fault? Okay, Your Honor, even if her counsel, which is Impact Capital's attorney, did not send the I-130, it is still, it doesn't comply with the, that in itself does not mean that Petitioner complied with the language of the statute. In this case, which is through no fault. And what if she reasonably, this was delegated to, by her employer, to the lawyer, and she believed that he had actually done what he was supposed to do, so why is this her fault? This, Your Honor, goes to the interpretation of the statute and the regulation, and I'd like to go through the issue. I know, but we don't get to the regs if the statute, the agency's definition of fault. Unless we determine that the word is ambiguous. Yes, Your Honor, and we addressed that issue in our brief, that that interpretation of the statute is entitled to Chevron deference, Your Honor. Well, I appreciate that it has Chevron deference, but I also appreciate in your brief that you do not address Chevron step one, which is the statute is clear and unambiguous. And my worry about is why is the fault, or why is the phrase no fault of your own ambiguous? You don't address that in your brief, and you put some regulations together suggesting that it was ambiguous. You did all of that, but I'm trying to figure out why you say it's ambiguous. Well, we say it is ambiguous because through no fault is a technical term, which the agency has interpreted that particular statute guided by congressional intent. Well, there was no, that's what your argument is, but it seems a little difficult to agree with that. We've got a phrase no fault of your own here. Why is that different from no fault of the alien in 1229A? You don't suggest that's ambiguous. The government has never suggested that's ambiguous. And yet those two phrases are the same. No fault of your own, no fault of the alien. If one's ambiguous, why aren't both? I mean, I'm trying to figure out how you're coming up with this idea. And we've come up with that, Your Honor, because of the implicit ratification and legislative acquiescence of the agency's regulation, Your Honor. But that's just saying because Congress hasn't said anything that they have validated it? Is that what you're suggesting? Well, not necessarily, Your Honor. This particular regulation went through the process of rulemaking. It's been under rules for 30 years. There was an interim rule, and then two years later there was a final rule. And since then, Congress has amended the INA, including the specific regulations and the statutes dealing with adjustment of status. And Congress has never deemed it fit to change that regulatory meaning. But even if Congress validated this regulation, as you suggest, what if I suggest that the interpretation was not reasonable? Isn't it the second prong of the evaluation about whether this regulation will succeed, that it all must be validated, plus it must be a reasonable interpretation? Yes, Your Honor. And if I suggest it's an unreasonable interpretation, even if you're going to argue Congress validated it anyway, then it doesn't survive scrutiny, does it? Well, Your Honor, this court in Marvey Sessions just last year, where there was a similar case where an alien relied on counsel to file a document, and the counsel did not do so, basically said that the regulation could withstand judicial review based on the legislative process involved in making this regulation. So we have this case here, Your Honor, where this court ruled in favor based on the legislative process that went into getting this regulation implemented. It's further worrisome to me to say that this statute is ambiguous when Congress made exceptions right in the statute. What exceptions? 1255. I mean, alien who continues in or accepts unauthorized employment prior to, or who is on awful immigration status on the date of the filing. They've come up with their own idea of what we ought to think about that. So, again, I'm back to the thought point, I don't know why no fault of your own is at all ambiguous, and therefore I don't think that this statute is ambiguous, Your Honor, and therefore why we ought to have a regulation at all. Well, it is, it is ambiguous, Your Honor, and the way the regulation has interpreted that particular statute is subject to Chevron deference because of the implicit ratification of the legislative acquiescence that went into this particular statute. Well, that's a fairly weak rule, but there are at least a half a dozen cases in the district courts in the Ninth Circuit, which are not subject to Chevron deference. Which have said that the agency has too narrowly construed the term, and the government, at least as far as I could tell, acquiesced in those decisions. Those were the district court decisions that were probably at a time when, before Congress in its great wisdom, took them away from district judges. But you acquiesced in them. And so what could we draw from already a fairly weak presumption about Congressional desire to somehow affirm the reg? Well, taking a step back, Your Honor, I guess the issue here is that even if the statute is narrowly construed, as Petitioner argues, the statute and the regulation are not subject to Chevron deference. The statute and the regulation specifically states that there are steps to be taken, that if the attorney actually states and accepts that he failed to mail the document or he was at fault, that the alien could then state a claim through no fault. But here, you heard opposing counsel say that they were not concerned about that, that they're not raising a claim of ineffective assistance of counsel or some sort of deficient performance. Well, there's two ways to look at this. You could deal with it in the sense that it's generally dealt with as a due process, and whether there's some sort of due process right to the effect of assistance of counsel. Or you could simply say, when counsel is ineffective, is it her fault, regardless of whether the ineffectiveness somehow violates the Constitution. Yes, Your Honor, but Petitioner is not even making that claim. Well, he goes back to the very issue, the important issue here, that substantial evidence does not support the fact that counsel mailed the document. Petitioner is standing by the fact that the document was mailed. But Petitioner has had four layers of review by fact-finders, by the immigration... Well, as I read, I can't put my finger on it immediately. But there's a paragraph in your brief that actually quotes what the Petitioner was saying. And she was reserving the right to argue ineffective assistance of counsel, but she was saying she was relying on the fact that he had. But it seems to me you want it both ways, because if he hadn't, if he had mailed it, then she wins. And if he hadn't mailed it, it's not her fault. That's how I sort of look at it. And that's how, you know, I may find it in a second, but that's how you actually quote a colloquy that occurred before the I.J. Your Honor, it is Petitioner that wants it both ways without taking a position on the issue. Petitioner till today has not taken a position on the issue of ineffective assistance of counsel. You heard the counsel say... She said no, but she, well, she said she reserved the right to make it. And what your adversary said is that it wasn't the Sixth Amendment due process right. And I don't think that's relevant, whether it's a Sixth Amendment or due process right. It's simply a question of whether, if he didn't file it, which is what the I.J. found, then in my view he was ineffective. He led her to believe that he did, and it wasn't her fault. But Petitioner is not making that claim. As we stated in our brief, your Honor, Petitioner has straddled the fence on this particular issue. Petitioner has not made that claim. Maybe if Petitioner made that claim, we would not be here. Let me ask you, not in the specific, but let's take in the general. If we were to find that ineffective assistance of counsel can be no fault, is it the government's position that Petitioner needed to comply with LAZADA? Yes, your Honor. Petitioner needed, over here in the regulation actually, it says that the agent of the Petitioner has to acknowledge that he was at fault. And that has not been done here. Well, wait just a minute. If you say that, yes, they need to comply with LAZADA, why hasn't enough been done here that there was no reason to comply because counsel got up and conceded ineffective assistance to counsel? In the hearing, said I either mailed it or I was ineffective assistance. If that, if you really are saying compliance with LAZADA is necessary, counsel already conceded that. The immigration judge asked several times, your Honor, whether they were making a claim of ineffective assistance of counsel. Well, I understand. And he declined. And this is what you quote at page 8 of your red brief as the response to the question. Ms. Peters' counsel stated that Ms. Peters was not asserting ineffective assistance of counsel, but reasonable reliance on her attorney, and then stated that Ms. Peters was not waiving an ineffective assistance of counsel claim for the purpose of appeal. That's how you characterize the answer. Yes, your Honor. So I don't see how you can come up here and say that somehow this, she can't make an argument that she preserved specifically. It says Ms. Peters stated she was not asserting ineffective assistance of counsel claim for the purpose of appeal. But there are procedures and remedies that have not been asserted here. Just saying that we're not, we're not going to waive our claim. Well, suppose he didn't mail it. Suppose he didn't do what he was obligated to do and was retained by her employer to do. Is that her fault? Isn't that, doesn't that, does that need a stamp, some sort of talismanic words to say that this is ineffective assistance of counsel? Looking at it from the layman's terms, it is not her fault. But looking at it from the technical interpretation of the regulation here, it is. No, no, I'm talking about, we've been talking about the statute. The statute, in my view, does not, when it says not her fault, that's not technical. Well, the statute is guided, again, the government's position is that the statute, the USCIS's interpretation of the statute is guided by congressional intent and entitled to deference because it is reasonable. The agency has delineated the circumstances under which the no fault concept applies. And it is in situations where, for example, there's a school and a student, an F1 student files an application and the agency, the representative of the agency in the school does not make the filing. In that case, the student is not in direct control of that employee. But in this case, Petitioner here was in control of her attorney. It is Petitioner's. In what sense? I mean, she understood that he was reapplying. As I read it, what the agency has done here with this reg is to make up exceptions or rules that are, that should have been made up by Congress. As Judge Smith pointed out, when Congress wanted to create exceptions, it did. Well, whenever Congress leaves, makes a statute and it is ambiguous, it is the responsibility of the agency to interrelate. I know. Then we get to the issue of ambiguity. Let me take it on a little bit different. I looked at footnote 14 of your brief. It's on page 32. It seems to me that you're conceding in footnote 14 that ineffective assistance could be no fault under the interpretation of the regulation. In fact, Your Honor. Is that what you did? The agency has said that in certain specific instances they could look at that. And our argument is that since Petitioner is not alleging here and has stated that there is no ineffective assistance here, she has not availed herself of that opportunity. Well, all you're saying is since she hasn't complied with LAZADA but her counsel got up and said, I was ineffective if I didn't mail it, you're going to require the LAZADA compliance? Is that all you're saying? And that's a crucial word here, you know, if I did not mail it. He did not say that he did not mail it. Well, I know. They've been very, very adamant about the fact that he mailed it. Could we interpret this regulation to suggest that an attorney qualifies as an individual and I'm reading this only because it's from the regulation, designated by regulation to act on her behalf? Well, that is not how the agency, which is mandated by Congress to interpret the statute, has interpreted it. And again, Your Honor, has interpreted the statute. The statute or the reg? You're talking about the reg now. I'm talking about the reg. Interpreting the statute. The reg interprets the statute. And the regulation specifically states that the attorney must or the representative must accept that they have failed. In this case, that has not been done. So the petitioner has not availed herself of the opportunity. Let's move to equitable tolling. Yes, Your Honor. Why shouldn't we treat equitable tolling in this case the same as we do on failure to file a timely motion to reopen, which includes deception, fraud, or error? Because none of those occurred here, Your Honor. Well, just the minute there was error, for sure. Well, they are not alleging error again, Your Honor. They are alleging that they mailed the document and that USCIS failed to adjudicate. And substantial evidence in the record shows that that didn't happen. All right. Let me ask you one more. Would equitable tolling be enumerated in the regulation addressing fault or technical reasons? Well, Congress already wrote certain equities into this particular regulation. The standard rule is that there are zero days. If you're out of status, you're out of status. But in the statute, Congress already gave the 180-day window period. It is, as we stated in our brief, a counting mechanism by which, you know, Congress sets the maximum amount of unlawful presence an alien can have and remain eligible for adjustment of status. It is not a limitations period, Your Honor. But there's an exception to that if it's not her fault. So you can't yes, Congress said 180 days. But unless they said unless or except if it's not, if the period beyond 180 days is not due to her fault. No, the counting mechanism does not go towards the fault. That goes towards applying for adjustment of status. They are two totally different things, applying for adjustment of status and being out of status. And so the regulation applies only to that aspect of the claim, Your Honor. It doesn't apply to the petitioner's application for adjustment of status. So they are two totally different things here, Your Honor. Can I ask you one question? Certainly. You're way over your time now, but just one quick question. If we were to find that substantial evidence does not support the finding that she didn't mail it, right, that we thought that there was enough evidence that Attorney Richmond actually did send it in the mail, do you concede that she wins in that scenario? No, we do not, Your Honor. We don't concede that she wins because she has not availed herself of the opportunity specified in the regulation that her agent admit that there was an error. If that had been done. Hang on, hang on. I think you misunderstood my question. I'm saying let's say that we found that the evidence supported the view that he did mail it. Oh, if you found that he did mail it. Let's say we found that he did mail it and any finding to the contrary was unreasonable, not supported by substantial evidence by the agency. In that scenario, do you concede that she would win? And you're saying that she would win on that, on their. I'm asking you. Yes, Your Honor. Do you concede in that scenario? We find that there was evidence that he did mail it. There was evidence, but there's no evidence, Your Honor. Okay. Well, I disagree with you on that, which is why I'm asking the question. Oh, you do disagree, Your Honor, that there's no evidence in the record that she mailed it. There's plenty of evidence that he mailed it. There's a doubt as to whether the agency received it, so that's why I'm trying to get you to answer the question. If we find that he mailed it, do you concede that she wins in that scenario? If we find that she mailed it, Your Honor, I, you know, I, the agency does not have any records of the document, Your Honor. I understand that. That's why I'm asking you, do you concede in that scenario that she would win? Yes or no? I, you know, I haven't thought about that, Your Honor. I, you know, she may rightfully win if there's ample record in the evidence in the record. I understand you disagree with that, with what I said. If there isn't, because there was no mailing receipt shown, they haven't even explored the idea of maybe it was lost in the mail. They focus only on the fact that the agency didn't receive it. So there are so many other scenarios.  Have you tried to, have you actually tried to settle this? You were, you could be pressing this case to a result that you might not like. Not a result, but a construction of the statute that you might not like. We have spoken with the agency. The record is there that there was mediation, but oil is not the one that adjudicates these cases. It's the agency, and the agency has declined based on its reasonable interpretation of the statute, Your Honor. Okay. Thank you very much for your argument. Thank you very much, Your Honor. Let's put two minutes on the clock for Petitioner's Counsel. I'd like to make two points. The first is what the Petitioner's position is on the no-fault exception. Part of the problem here is that the immigration court, by the structure of these regulations, forced the Petitioner to pick a lane. Had to say the agency did not receive the mailing, or had to say that Mr. Richmond was ineffective as counsel. But we don't know what happened here. It sure looks like the agency received the package. It sure looks like, there's a lot of evidence that it was sent in the mail, and that from the FOIA request, there's all sorts of strange things about her file that suggests that the I-129 petition was actually received. But if that's not the case, then the fact would be that Mr. Richmond was lying all along about having sent in this petition, and deceived his client about having sent it in. After it was sent in, after there was no receipt, Mr. Richmond, Petitioner's employer and Petitioner herself, tried to contact this agency, tried to get an answer about why they weren't having this petition adjudicated. They resorted to writing to congressmen and the White House and the governor of California for help in getting this petition resolved. So, either there's an elaborate conspiracy here that everybody knew that it wasn't sent in and we were pretending otherwise, or, more likely, the package was sent and the agency received it and lost it. So, no matter what happened under the facts, it wasn't Petitioner's fault. That's the argument here. That's what's key. Petitioner doesn't need to prove that Mr. Richmond lied. She doesn't need to prove that the agency received the mailing. She needs to prove that whatever happened, it wasn't her fault. And the record is abundantly clear that whatever happened, she was not at fault. The second point is on equitable tolling. The respondent contends that the 180-day grace period is a counting mechanism, but that's what a deadline is. It's a period of time in which Petitioner had to do something or face consequences. So, this 180-day period created an administrative deadline, which this court's precedents make clear are subject to equitable tolling. Okay. Thank you very much. And, Mr. Orr, before you leave, let me, on behalf of the court, thank you for being willing to take this case on a pro bono basis. I understand you took it through the court's appointment program. Thank you. It was our pleasure. Yeah. Well, you've done an excellent job for your client, and we really appreciate the help with this case. Thank you. Thank you. The case just argued is submitted.
judges: N.R. Smith, Watford, Korman